J-S08031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: Z.L.R.-L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1259 MDA 2023 |

Appeal from the Decree Entered August 7, 2023
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  103-AD-2022,
CP-22-DP-83-2021

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED: MAY 1, 2024**

C.L. ("Mother") appeals the August 7, 2023 decree that involuntarily terminated her parental rights to her biological son, Z.L.R.-L. ("Child"), born in April 2021.[1]   Mother's counsel, Fawn E. Kehler, Esquire, has filed an

---

[*] Former Justice specially assigned to the Superior Court.

[1] In the same decree, the orphans' court also terminated the parental rights of any unknown father as to Child.  For the sake of Child's permanency, we note a procedural irregularity in this regard.  Between April 2021 and December 2023, the identity of Child's father was unknown.  **See** Notes of Testimony ("N.T."), 8/7/23, at 27-28; **see also** Aggravated Circumstances Order, 12/21/21, at 1 (finding aggravated circumstances as to unknown father after he failed to claim Child within three months of the Agency assuming custody).  Thus, the underlying petition filed by the Agency in this matter sought to terminate the parental rights of any unknown father.

In February 2023, however, Mother disclosed for the first time that Child's biological father was an individual named E.R.  **See id.** at 3.
*(Footnote Continued Next Page)*

J-S08031-24

application to withdraw and a brief pursuant to *Anders v. California*, 386

U.S. 738 (1967), asserting that Mother's appellate claims are frivolous.[2]  After

careful review, we affirm the decree involuntarily terminating Mother's

parental rights and we grant Attorney Kehler's application to withdraw.

We gather the relevant factual and procedural history of this matter

from the certified record.  Dauphin County Social Services for Children and

Youth ("the Agency") had a substantial history of past involvement with

Mother.[3]  The Agency became involved in the instant controversy shortly after

Child's birth in April 2021, when it received a referral indicating Mother had

_____

Thereafter, it appears that E.R. was treated as a putative father by the Agency, which included providing E.R. with notice of the termination hearing pursuant to 23 Pa.C.S.A. § 2513(b).  *See* Affidavit of Service, 8/3/23, at 1. On the morning of the hearing, E.R. placed a telephone call to the orphans' court and requested a continuance, which was denied.  *See* N.T., 8/7/23, at 3-4*.*  E.R. has not appealed or otherwise taken any other action in these proceedings.  We note with some concern, however, that the Agency never amended the termination petition to include E.R. in the scope of relief sought. Moreover, the orphans' court issued no specific findings with respect to E.R.'s parental rights.  Although this irregularity may have implications as to Child's permanency, we discern no impediment to our review of the instant appeal.

[2] *Anders* applies in the context of termination of parental rights appeals.  *See In re Adoption of B.G.S.*, 240 A.3d 658, 661 (Pa.Super. 2020).

[3] In 2012, the Agency received referrals regarding Mother's firstborn child, T.L., who passed away accidentally that same year.  In April 2015, the Agency was involved in an investigation which resulted in Mother being indicated for medical neglect of her second child, Zy.L.  *See* N.T., 8/7/23, at 30.  In April 2017, the Agency received a referral concerning Mother's third child, Za.L., which resulted in that child being released into the custody of his father.  *See id.* at 31.  We discern that Mother's parental rights to both Zy.L. and Za.L. were, ultimately, terminated in separate legal proceedings.

- 2 -

abused marijuana throughout the pregnancy and was suffering from untreated mental health issues. *See* N.T., 8/7/23, at 30. The Agency was awarded emergency protective custody of Child in May 2021, which was confirmed at a shelter care hearing. On May 26, 2021, Child was adjudicated dependent and placed in pre-adoptive foster care under the care of K.F. and D.F. (collectively, "Foster Parents"). *See id.* at 80. Child has remained in the same placement throughout these proceedings.

Child's initial permanency goal was set as reunification with a concurrent goal of adoption. To that end, Mother began receiving reunification services from the Agency. As part of her service plan, she was required to cooperate with the Agency and its recommendations, maintain sobriety and stable mental health, and demonstrate appropriate parenting skills in her interactions with Child. Accordingly, Mother was required to undergo a psychological evaluation, submit to a drug and alcohol evaluation, and participate in weekly drug screens. Finally, she was also directed to participate in "evidence-based" parenting classes. *See id.* at 43, 46-47.

Beginning in May 2021, Mother also began participating in weekly, supervised visitations with Child. Although Mother's interactions with Child during these visits were generally deemed to be appropriate and loving, her interactions with the representatives of the agencies involved were uniformly negative and combative. Specifically, Mother was discharged from visitation programs administered by both YWCA and Child First due to her hostile

behavior and unrelenting attempts to inappropriately record all of her visitations with Child. *See id.* at 32-34. Although the Agency supervised Mother's visits following her discharges from these ancillary service providers, ultimately, the trial court suspended Mother's visitations in April 2022.

Between May 2021 and December 2021, Mother was rated as being in moderate compliance with her service objectives. *See id.* at 35-36. She completed a drug and alcohol evaluation in July 2021, which concluded that she should be enrolled in outpatient treatment. Mother, however, did not engage in this recommended course of substance abuse treatment. Mother participated in urine screens between June and August 2021, during which time she tested positive for marijuana. *See id.* at 45. Between August 2021 and August 2023, Mother failed to participate in any drug tests. *See id.*

Between December 2021 and October 2022, Mother's compliance with her service objectives was rated as minimal. *See id.* at 37, 39-40, 42. On September 7, 2022, Mother underwent a psychological evaluation carried out by Donna-Mae Fierras, Psy.D. ("Dr. Fierras"), which resulted in Mother being diagnosed with bipolar I disorder. *See id.* at 9-10. Prior to this evaluation, Mother had also been diagnosed with cannabis use disorder, major depressive disorder, and anxiety. *See id.* at 45. Dr. Fierras recommended that Mother participate in outpatient therapy, behavioral therapy, and "evidence-based parenting classes." *See id.* at 10-11. Although Mother enrolled in therapy and counseling through both the Youth Advocate Program and Pennsylvania

- 4 -

Counseling Services, she was unsuccessfully discharged from both programs due to her failure to engage or make progress. *See id.* at 43, 46. Furthermore, Mother never completed behavioral therapy or evidence-based parenting classes.[4] *See id.* at 43, 46-47.

On December 12, 2022, the Agency filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court held a termination hearing on August 7, 2023, at which time Child was approximately two years old.[5] Therein, the Agency adduced testimony from, *inter alia*, Dr. Fierras and Aesha Wiggins, a caseworker and supervisor from the Agency. Mother was represented at the hearing by Attorney Kehler and also testified on her own behalf.

_____

[4] Although Mother completed parenting courses offered by both the North American Learning Institute and Samara, these programs did not qualify as "evidence-based programs." *See* N.T., 8/7/23, at 40-42, 50, 65.

[5] The record is silent concerning the appointment of legal interest counsel for Child as contemplated pursuant to 23 Pa.C.S. § 2313(a) ("The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents."). We note, however, that Heather Paterno, Esquire, served as Child's guardian *ad litem* during the termination hearing and advocated in his best interests. Insofar as Child was two years old at the time of these proceedings, we observe no structural defect. *See Interest of K.N.L.*, 284 A.3d 121, 151 n.23 (Pa. 2022) (holding appellate court must perform "limited *sua sponte* review" to confirm orphans' court's appointment of legal counsel in conformity with 23 Pa.C.S.A. § 2313(a)); *In re T.S.*, 648 Pa. 236, 256-57, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding that "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal," then the mandate of § 2313(a) "is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests during such proceedings.").

In a decree dated August 7, 2023, the orphans' court involuntarily terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). On September 6, 2023, Mother filed a timely notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, the orphans' court filed an opinion explaining its rationale pursuant to Rule 1925(a)(2)(ii).

On January 26, 2024, Attorney Kehler filed an application to withdraw pursuant to **Anders** along with a brief expressing her belief that Mother's potential appellate claims are frivolous.[6][7] Accordingly, we will begin our review of the case *sub judice* by considering counsel's petition to withdraw and accompanying brief. **See B.G.S.**, 240 A.3d at 661 ("When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

In order to successfully withdraw pursuant to **Anders**, counsel must: (1) petition the court for leave to withdraw and aver that, after making a conscientious examination of the record, he has determined that an appeal would be frivolous; (2) furnish a copy of the **Anders** brief to the appellant;

---

[6] On January 16, 2024, Attorney Kehler submitted an application to withdraw and an **Anders** brief, which was denied due to a lack of sufficient discussion of the orphans' court's findings pursuant to Section 2511(a) and (b). **See** Order, 1/19/24. As discussed *infra*, Attorney Kehler's revised submissions pursuant to **Anders** are sufficiently detailed to comply with Pennsylvania law.

[7] The Agency has declined to file a brief in this Court.

and (3) advise the appellant that they have the right to retain private counsel or bring additional arguments to the court's attention. **Id.** To confirm client notification has occurred, counsel must provide a copy of the letter advising the appellant of their rights in conformity with **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa.Super. 2005). **See B.G.S.**, 240 A.3d at 661.

Our Supreme Court has also set forth substantive requirements for counsel's **Anders** brief, which must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes would arguably support the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. **Id.** (citing **Commonwealth v. Santiago**, 602 Pa. 159, 178-79, 978 A.2d 349, 361 (Pa. 2009)). Therefore, a fully compliant **Anders** brief should "articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous." **Id.**

Instantly, Attorney Kehler has submitted both a petition to withdraw and an **Anders** brief averring that Mother's appeal is frivolous. Attached to counsel's application is a **Millisock** letter dated January 26, 2023, which properly advised Mother of her right to retain alternative counsel or raise supplemental arguments on her own.[8] **See** Application to Withdraw as

---

[8] Mother has not tendered a response to counsel's application to withdraw.

Counsel, 1/16/24, at 5-6 (unpaginated). Furthermore, Attorney Kehler also served Mother with a copy of the **Anders** brief filed on January 26, 2024. **See** Anders Brief at 25. Thus, the requirements of **Millisock** are satisfied.

Similarly, our review confirms that the **Anders** brief submitted by Attorney Kehler provides an adequate summary of the factual and procedural history of this matter, which includes citations to the certified record. **See** Anders Brief at 10-11. Furthermore, the brief contains a sufficient discussion of governing Pennsylvania law as applied to these circumstances. **See id.** at 13-24. While counsel refers to lines of argument that might support Mother's appeal, she explains that these potential points are frivolous in light of the evidence supporting the orphans' court's termination decree. **See id.**

Based upon the foregoing, we conclude that Attorney Kehler has complied with the procedural requirements attendant to **Anders**. Therefore, we will proceed to review the merits of the issues outlined in Attorney Marshall's brief and "'conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel.'" **B.G.S.**, 240 A.3d at 662 (quoting **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa.Super. 2015)). In particular, we will focus upon the issues identified in the **Anders** brief, *i.e.*, that the orphans' court's termination findings pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2101, *et seq*. ("the Act") were not supported by sufficient evidence. **See Anders** Brief at 13-24.

Our standard of review in this context is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa.Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines that the petitioner has established grounds for

termination under at least one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. ***In re T.S.M.***, 620 Pa. 602, 628, 71 A.3d 251, 267 (Pa. 2013). This Court need only agree with the orphans' court's determination as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." ***Id.***

Our analysis in this case will focus upon Section 2511(a)(8) and (b), which provides as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

In order to satisfy Section 2511(a)(8), the petitioner must prove that: (1) the child has been removed from the parent's care for at least 12 months; (2) the conditions which led to the removal or placement still exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa.Super. 2018). Section 2511(a)(8) does not necessitate an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal of the child. *See In re M.A.B.*, 166 A.3d 434, 446 (Pa.Super. 2017). Rather, our inquiry is focused upon whether the at-issue "conditions" have been "remedied" such that "reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009). In this, the statute recognizes "that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. We cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *Id.* at 11-12 (internal citations and quotation marks omitted).

Finally, this Court has also explained that,

while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed

- 11 -

by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

**In re Adoption of C.L.G.**, 956 A.2d 999, 1009 (Pa.Super. 2008) (*en banc*).

If a petitioner establishes adequate grounds for termination pursuant to Section 2511(a), we then turn to Section 2511(b), which requires that the court "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). Our Supreme Court has generally outlined this inquiry, as follows:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.
>
> Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.
>
> Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The courts must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

**Interest of K.T.**, 296 A.3d 1085, 1105-06 (Pa. 2023) (cleaned up).

The extent, however, of the "bond-effect analysis necessarily depends on the circumstances of the particular case." **In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa.Super. 2010) (cleaned up). Rather, it is within the province

of the orphans' court to "consider the totality of the circumstances when performing a needs and welfare analysis." *M.E.*, 283 A.3d at 839 (cleaned up). This Court has clarified that it is "within the discretion of the orphans' court to prioritize the safety and security" of children "over their bonds with their parents. *Id.* We will not disturb such an assessment if the orphans' court's factual findings are supported by the record. *Id.*

We will begin by reviewing the orphans' court's findings pursuant to Section 2511(a)(8). Initially, we note that Child had been removed from Mother's care for approximately 26 months at the time of the termination hearing, *i.e.*, well beyond the 12-month time frame contemplated by statute. Thus, the first prong of Section 2511(a)(8) is satisfied.

Turning to the second factor of Section 2511(a)(8), the trial court concluded that Mother's drug use and mental health issues that precipitated Child's removal continued to exist at the time of the termination hearing. *See* Orphans' Court Opinion ("O.C.O."), 10/19/23, at 10 ("The record establishes by clear and convincing evidence that for an unreasonable time, Mother failed to remedy the conditions which led to placement although services and opportunities to do so were made readily available to enable her to do so."). The orphans' court expressed particular concern about Mother's mental illness. *See id.* at 12 ("Mother failed to consistently address her mental health concerns, the primary impediment to her ability to safely parent [Child].").

Our review confirms that the orphans' court's conclusions are well-supported by the certified record. In particular, the testimony of Dr. Fierras is instructive on this portion of our review. Specifically, Dr. Fierras testified that Mother's bipolar I disorder caused her to suffer from "asocial tendencies" that significantly impaired her "societal functioning" and caused her to lack the "adequate skills" to navigate "close intimate relationships or situations." **See** N.T., 8/7/23, at 9-10. Dr. Fierras generally described Mother's behavior as aggressively oppositional, explosive, erratic, and paranoid. **See id.** at 11-12. Furthermore, she opined that these were engrained aspects of Mother's personality, as opposed to a mere emotional reaction towards the Agency. **See id.** at 17 ("[T]his seems to be a longstanding pattern in terms of how she interacts with people and just her personality functioning rather than it explicitly being related to Agency involvement and things like that."). Moreover, Dr. Fierras emphasized that Mother's mental illness "compromises" her "functioning" in a fashion that undermines her ability to parent Child. **See id.** at 17-18. In order to properly address these "deep seated" concerns, Dr. Fierras opined that Mother would need to complete an initial course of outpatient treatment and then undergo further evaluation. **See id.** at 20-21.

According to the testimony of Ms. Wiggins, however, Mother has failed to engage with or follow-through with respect to any of her mental health treatment requirements. **See id.** at 43, 46-47 (indicating that Mother was discharged from two different counseling programs due to lack of

engagement). Along similar lines, Ms. Wiggins also testified that Mother has failed to curb her abuse of marijuana, or participate in regular drug screenings.[9] *See id.* at 45. Based upon the foregoing, we find sufficient evidence to conclude that the conditions which led to Child's removal continue to exist for the purposes of Section 2511(a)(8).

The third and final prong of this analysis requires the court to consider whether termination of Mother's rights will best serve the needs and welfare of Child. *See* 23 Pa.C.S.A. § 2511(a)(8). In pertinent part, the orphans' court found that "[g]rave concerns remain as to whether Mother can sustain behaviors necessary to safely parent" Child. O.C.O. at 12. As detailed above, the testimony of Dr. Fierras indicated that Mother's mental illness impedes her functioning and negatively impacts her ability to parent Child. *See* N.T., 8/7/23, at 17-18. Furthermore, Ms. Wiggins testified at length that Mother was unable to control her belligerent behavior towards representatives of the Agency. *See id.* at 36-37, 72-76. This persistent misbehavior eventually convinced the court to sever Mother's visitation privileges with Child in April 2022, after concluding that further contact would not be in Child's best interest. *See id.* at 40.

Viewing this evidence in conjunction with the information concerning Mother's unaddressed mental illness, we find sufficient evidence to support

---

[9] Although Mother claimed she has a medical marijuana card, there is no corroborating evidence to support her bald assertion.

the orphans' court's finding that the third aspect of Section 2511(a)(8) was established by the Agency. Accordingly, we observe no abuse of discretion or error of law in the orphans' court's determination that involuntary termination of Mother's parental rights was warranted pursuant to Section 2511(a).

We now turn to consider whether involuntary termination was appropriate pursuant to Section 2511(b), which affords primary consideration to the developmental, physical, and emotional needs and welfare of Child. *See* 23 Pa.C.S.A. § 2511(b). With the respect to the mandatory bonding assessment, we note that the certified record discloses no evidence of an arguable bond existing between Mother and Child. Given the absence of any affirmative indications to the contrary, it is reasonable to conclude that no parental bond exists between Child and Mother. *See Matter of M.P.*, 204 A.3d 976, 984 (Pa.Super. 2019) ("Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists."). Indeed, Mother and Child had not had any contact with one another for approximately seventeen months at the time of the termination hearing.

Concomitantly, Ms. Wiggins reported that Child shares a close and loving parental bond with Foster Parents, who have cared for him essentially the entirety of his young life. *See* N.T., 8/7/23, at 52 ("He has a very strong bond with the foster family."). Overall, the orphans' court summation of its best interest findings is quite apt: "We find that [Child] has bonded with [Foster Parents] and that his best interests are served in that home. The foster home

has provided [Child] with the safety, stability[,] and love which has enable him to thrive. It is the only home he has ever known." O.C.O. at 14.

Thus, our independent review confirms that Mother's potential claims challenging the sufficiency of the Agency's evidence are frivolous. Furthermore, we are satisfied that the record does not contain any issues overlooked by Attorney Kehler. Therefore, we grant her petition to withdraw under the framework of **Anders** and we affirm the decree of the orphans' court involuntarily terminating Mother's parental rights to Child.

Application to withdraw granted. Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/01/2024